**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-CR-0126-CVE |
| ) | (08-CV-0633-CVE-PJC) |
| MARK EDWARD BROWN, ) | |
| ) | |
| Defendant. ) | |

**OPNION AND ORDER**

Now before the Court[1] is defendant Mark Edward Brown's pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 124). Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

On March 18, 2006, at approximately 7:15 p.m., two men with hoods over their heads entered the Homeland grocery store at 91st Street and Memorial Drive in Tulsa, Oklahoma, and attempted to rob the store. Dkt. # 99, at 26, 32-34. As the men tried to follow the assistant manager into the manager's booth, one of the men put a gun to the assistant manager's face. Id. at 33-34. After a brief struggle, the assistant manager was knocked on his back, giving him the chance to push the store's panic button. Id. A customer in the store, who had a concealed weapon permit and was

---

[1] Although the underlying criminal proceeding was before then-Senior United States District Judge H. Dale Cook, this § 2255 motion was randomly reassigned to the undersigned.

carrying a loaded revolver, saw what was happening and fired two shots, striking the man holding the gun. Id. at 46-47.

As the two men exited the store, a second customer saw a white Oldsmobile Cutlass pull up, and then speed away after someone in the car helped the man who had been shot. Id. at 59-65. A third customer, Terry Gordon, also saw the white Oldsmobile. Id. at 71-73. The white car exited the Homeland parking lot, heading west on 91st Street. Id. at 59-65. Another witness, Amy Stitt, was also exiting the Homeland parking lot and also turned west on 91st Street. Id. at 81, 89. She observed emergency vehicles heading towards the store and, less than a minute later, a car pulled up on her right, swerving like it wanted to go around her. Id. The car followed Stitt's car to the intersection of 91st Street and Sheridan Avenue, where it cut through a parking lot, and turned north on Sheridan. Id. at 83-84. Stitt also turned north on Sheridan and wound up directly behind the car that had tried to pass her. Id. at 85. Stitt was on the phone with her husband, so she told her husband to write down the car's tag number. Id. at 84-85. Stitt could see the tag clearly, and had her husband read the number back to her so she could be sure that it was the correct number. Id. at 85-86, 94. Stitt pulled into a parking lot and called 911 to report the car for driving erratically. Id. at 86-87.

Tulsa Police Detective Stephen St. Clair traced the tag number provided by Stitt, and learned that the car was registered to Archer Street Paint and Body Shop. Id. at 129-31. The owner of the shop told officers that Brown's stepfather had purchased the car for his son, Mark. Id. at 98-99. Brown's stepfather confirmed that he bought the car for Brown in January 2006, and he had seen Brown with the car on either March 17 or 18, 2006. Id. at 110-16.

Tulsa police reviewed the security cameras from the Homeland grocery store, which showed Brown in the store on the night of the attempted robbery. Id. at 125-26. Brown was questioned about the robbery, and repeatedly denied any involvement. Id. at 133-34, 143, 145-46. However, Brown admitted that he was in the store at some time that night. Id. Brown also admitted that he owned the car believed to be the getaway car, but claimed that he was not in the car on March 18, 2006. Id. at 145-46.

On June 5, 2006, a criminal complaint was filed charging Brown and a co-defendant, Michael Lee Curley, with attempted robbery of a grocery store in Tulsa, Oklahoma. Dkt. # 1. At his initial appearance on June 13, 2006, attorney Art Fleak was appointed to represent Brown. Dkt. # 6. On July 13, 2006, a four-count indictment was returned, charging Brown and Curley with attempted robbery, in violation of 18 U.S.C. § 1951; using, carrying and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and one count each of possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Dkt. # 19. Brown was also charged with aiding and abetting, in violation of 18 U.S.C. § 2.

On the morning of trial, Brown informed Judge Cook that he was not satisfied with Fleak's performance, and that he had not seen all of the discovery in his case. Dkt. # 99, at 7-8. Fleak responded that he had reviewed all discovery materials received from the government. Id. at 16. Nonetheless, Brown told Judge Cook that he wanted to represent himself or have another attorney appointed. Id. Judge Cook told Brown that he would not appoint another attorney, but Brown could represent himself, as long as he followed the rules of evidence and the rules of the court. Id. Brown then stated that if he represented himself, he wanted different stand-by counsel. Id. After some

3

discussion about whether Mr. Fleak would be relieved from his representation of Brown, Brown stated that "[Fleak will] represent me and if [I] get found guilty I will just appeal this." Id. at 23.

At trial, the government offered the testimony of Floyd Edwards, Brown's cellmate while he was awaiting trial. Id. at 171-72. Brown objected to Edwards' testimony, and the government explained that the testimony was offered as circumstantial evidence of guilt. The district court overruled Brown's objection and permitted Edwards to testify. Id. Edwards testified that, during the time they shared a cell, Brown talked about the robbery of the Homeland store, changing his story over the course of their conversations. Id. at 210. According to Edwards, Brown admitted that he entered the store to look around and then waited for his companions to go in and rob the store. Id. at 212. Brown allegedly told Edwards that they used a car he had just purchased and that, after the robbery, they took the car to Oklahoma City and burned it. Id. at 212-14. Edwards testified that Brown later changed his story and stated that they took the car to the country and crushed it. Id. at 213-14. According to Edwards, Brown stated that when they drove to Oklahoma City, they threw the gun in a dumpster. Id. at 213.

Edwards also testified that Brown told him that Curley was supposed to pay Brown's bond and give him one thousand dollars for Brown's destroyed car. Id. at 213. Brown was angry that Curley had not done these things and told Edwards that he planned to get out of jail on bond another way, and shoot Curley when Curley left his house to go to work. Id. at 214-15.

Brown's co-defendant, Curley, who pleaded guilty pursuant to a plea agreement with the government, testified against Brown at trial. Id. at 273-74. Curley admitted to a substantial criminal history. Id. at 275-77. Curley testified that he and Brown had discussed doing a robbery "after some other activities [they] had, illegal activities that [they] had done . . . ." Id. at 279. Brown objected

to Curley's testimony and moved for a mistrial. Id. at 279-80. The district court stated that the testimony was related to the charged crime and could not be stricken without denying the jury an understanding of why the robbery occurred. Id. at 280. Accordingly, the district court overruled Brown's motion for a mistrial. Id. Curley continued with his testimony but, after Curley testified about a failed plan to rob a T-Mobile store, Brown again moved for a mistrial. Id. at 281-83. The district court concluded that the failed robbery of the T-Mobile store and the robbery of the Homeland were related crimes and overruled Brown's motion. Id.

Curley then testified about his meeting with Brown to plan the robbery. Id. at 284. Curley testified that, on the night of the robbery, Brown, Curley, and the third robber, Wallace McCoy, drove in Brown's white Oldsmobile Cutlass to the Homeland store. Id. at 287-90. When they arrived, Brown entered the store and then came back and described what he saw inside. Id. at 291. Curley told Brown that he was nervous, and Brown gave Curley some marijuana to smoke. Id. at 292-93. Brown's lawyer objected to this testimony and the district court overruled the objection. Id. at 292. Curley testified that Brown asked Curley if he had the gun and Curley showed him the gun. Id. at 295. According to Curley, Brown, Curley and McCoy discussed using the gun to intimidate the store manager. Id. at 296.

After Brown was arrested, he called Curley from jail and asked him to give him money or else he would tell what he knew about Curley's involvement in the robbery. Id. at 312. Curley was eventually arrested and placed in the same jail as Brown. Id. at 315. Curley received two letters from Brown through other inmates. Id. The first letter was dated April 12 and stated "If I'm not out by Monday the storm is coming." Id. The letter also stated that Brown still had the gun, just in case. Id. at 317. The second letter was written on the back of a jail commissary slip. Id. at 318. The

government sought to introduce it into evidence, and Brown objected on hearsay grounds. Id. at 319. The court ruled that the letter was hearsay, but asked Brown if he objected to Curley being asked if the letter referred to McCoy by his nickname. Id. at 322. Fleak did not object, and Curley testified that no one besides Brown and Curley would know that the nickname in the letter referred to McCoy. Id. at 323. Curley stated that he believed the letter was written by Brown and, over Brown's objection, it was admitted into evidence. Id. at 324.

Brown did not move for acquittal at the close of the government's case, nor did he call any witnesses or testify in his own defense. Id. at 358-59. The jury found Brown guilty as to all three counts against him. Id. at 363-64, Dkt. # 58. After trial, Brown filed a pro se motion for appointment of new counsel for sentencing and appeal (Dkt. # 63), which was denied (Dkt. # 70).

A pre-sentence investigation report (PSR) was prepared and, on December 22, 2006, Brown sent a letter to Judge Cook containing his pro se objections to the PSR and stating that the enhancement under 18 U.S.C. § 924(c) must be proven by clear and convincing evidence. Dkt. # 81. On December 29, 2006, Fleak filed a document entitled "Defendant Mark Edward Brown's Objections to Presentence Report." Dkt. # 80. In that document, Fleak noted that Brown objected to the PSR, but he did not feel that Brown's objections were appropriate and declined to file his own objections on Brown's behalf. Id. On January 10, 2007, Brown was sentenced to 78 months imprisonment on counts one and three, to run concurrently, and 84 months on count 2, to run consecutively to the other counts. The court noted that Brown had objected to the 924(c) enhancement, but stated that the enhancement had been found by a jury beyond a reasonable doubt. Dkt. # 103, at 2. The court also noted that Brown's other objections to the PSR were equally

without merit. Id. On February 6, 2007, the court entered a judgment and commitment. Dkt. # 98.

Fleak filed a timely notice of appeal on Brown's behalf and then filed a motion with the Tenth Circuit seeking to withdraw as counsel and have new appellate counsel appointed. The Tenth Circuit granted the motion and appointed Terry Weber as appellate counsel. Weber then filed a motion and brief pursuant to Anders v. California, 386 U.S. 738 (1967), identifying the following issues: (1)sufficiency of the evidence; (2) admission of the letters Curley received in jail; and (3) ineffective assistance of counsel. Weber concluded that he believed there were no legitimate issues to appeal. Brown filed a response to the Anders brief and argued that (1) the district court erred in not allowing him to represent himself at trial and not appointing substitute counsel after trial and (2) the district court erred in admitting various pieces of evidence against him. On October 25, 2007, the Tenth Circuit affirmed Brown's conviction and sentence and found that there was "ample" evidence to support Brown's convictions, the jailhouse letters had been properly admitted, and ineffective assistance of counsel was inappropriately raised on direct appeal. United States v. Brown, 255 Fed. Appx. 292 (10th Cir. 2007). The Tenth Circuit also held that Brown had "failed to clearly and unequivocally invoke his right to self-representation," and found that Brown's argument regarding his denial of substitute counsel was "equally frivolous because [Brown] failed to make a valid request." Id. at 296.

On October 23, 2008, Brown filed this motion under § 2255. Dkt. # 124. Therefore, Brown's motion was filed within the one-year statute of limitations provided by § 2255, and his motion is timely. Brown raises three claims in his § 2255 motion: (1) ineffective assistance of trial

7

counsel; (2) the Tenth Circuit failed to properly address his request for substitution of counsel; and (3) ineffective assistance of appellate counsel. Id.

## II.

To establish a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Smith v. Robbins, 528 U.S. 259, 285 (2000) (the Strickland test applies to appellate as well as trial counsel). A defendant can establish the first prong by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Review of counsel's performance must be highly deferential. Id. at 689. To establish the second prong, a defendant must show prejudice resulting from counsel's performance. Strickland, 466 U.S. at 687. That is, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). A court deciding an ineffectiveness claim "need not determine whether counsel's performance was delinquent before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

To the extent that defendant alleges certain arguments should have been raised by his counsel on appeal, the Court must consider the merits of the omitted issue. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.' " Id.

**A.     Ineffective Assistance of Trial Counsel**

Brown presents thirteen complaints about trial counsel's performance, claiming counsel failed to: (1) present significant exculpatory evidence; (2) attack the credibility of prosecution witnesses; (3) file motions on Brown's behalf; (4) offer any exhibits into evidence; (5) challenge the composition of the jury pool; (5) consider a motion to recuse because Brown had previously been acquitted in a case before Judge Cook; (6) "push for" an identity instruction; (8) move for a spoliation instruction regarding destroyed 911 tapes; (9) request a "mere presence" instruction; (10) make an adequate closing argument; (11) object to Brown's pre-sentence report; (12) allow Brown to see discovery in the case; and (13) challenge the constructive possession of a firearm. Brown alleges that appellate counsel was ineffective for failing to raise the denial of Brown's request for substitute counsel and the denial of his right to represent himself.

**1.     Exculpatory Evidence**

Brown asserts that his trial counsel, Fleak, hired a private investigator who located twelve witnesses, but Fleak failed to subpoena any of them to testify at trial. Fleak, however, in an affidavit, states that his private investigator interviewed Brown and the supposed alibi witnesses and determined that "nothing checked out." Dkt. # 136-2, at 3. Fleak informed Brown that he would not call Brown's "alibi" witnesses to testify because Brown would risk a longer sentence for suborning perjury. Id. The decision to call witnesses is a strategic decision and will not be the

grounds for ineffective assistance of counsel, unless the decision falls below an objective standard of reasonableness. Fleak, after a careful investigation into his client's story, determined that calling these supposed alibi witnesses would harm, rather than help, Brown's case. Trial counsel was not ineffective for failing to subpoena these witnesses.

### 2. Cross-Examination of Prosecution Witnesses

Brown alleges that Fleak failed to attack the credibility of prosecution witnesses. However, the trial transcript shows that trial counsel cross-examined three prosecution witnesses, Michael Curley, Floyd Edwards, and Julius Garrett. Fleak questioned Curley about his plea agreement with the government and asked about Curley's prior convictions and jail time. Fleak also asked Curley about his use of marijuana and PCP on the night of the robbery. Edwards was cross-examined by Fleak with regard to a state criminal charge that was dismissed the day after he gave a statement about Brown. Fleak also elicited an admission from Edwards that he received money from the state for testifying as a witness. Fleak also questioned Edwards about inconsistencies in his statements. In addition, Fleak asked Garrett, who had been convicted of robbery and assault with intent to cause physical harm, whether he hoped for leniency in exchange for his testimony against Brown. Accordingly, Brown is incorrect that his trial counsel failed to attack the credibility of government witnesses.

Brown also complains that Fleak did not effectively cross-examine Detective Stephen St. Clair and eyewitness, Amy Lynn Stitt. Brown asserts that there is inconsistency between Detective St. Clair's characterization of when Brown was in the Homeland store as "moments" before the robbery, and his assertion that Brown was in the store approximately 30 minutes before the robbery. However, this supposed "inconsistency" was not material. Fleak made a strategic decision as to

10

which questions were important to ask government witnesses and which were immaterial. Thus, he did not render deficient performance. Moreover, Brown cannot show that the distinction between "moments" or "30 minutes" was significant to the jury's verdict, and therefore cannot meet the prejudice prong of the Strickland test. With regard to Stitt, Brown complains that Fleak did not challenge Stitt as to the lack of a written record of the license plate number that she reported to the police. However, Stitt testified that she accidentally threw away the paper. Accordingly, Fleak was not ineffective for failing to question her further about the lack of a written record.

### 3. Failure to File Motions

Brown argues that trial counsel was inefficient for failing to move to exclude or suppress jailhouse notes, which were introduced into evidence and attributed to Brown. However, Fleak did object to the admission of the jailhouse letters. Fleak stated, "Your honor, we would object to this letter based on the fact that there's no showing that Mr. Brown wrote it . . . ." Dkt. # 100, at 267. Judge Cook disagreed and stated that Garrett testified that the note was given to him by Brown, and admitted the evidence. Fleak also objected to the admission of another letter purportedly written by Brown, but was overruled again. Moreover, the Tenth Circuit rejected this argument and concluded that "the letters contained sufficient specific references to the attempted robbery and the individuals involved that they may be properly authenticated as having been written by Mr. Brown." Brown, 255 Fed. Appx. at 295. Accordingly, Fleak did object and his performance was not deficient. Furthermore, had he not objected, Brown would be unable to show prejudice because the Tenth Circuit found that the letters were properly admitted.

### 4. Failure to Offer Exhibits

Brown claims that trial counsel was ineffective because he failed to offer any exhibits and failed to make use of the police reports, which Brown claims contained inconsistencies. However, Brown fails to identify the inconsistencies, nor does he explain which exhibits should have been offered. Although Brown files this motion pro se, the Court will not craft his arguments for him, nor will vague or conclusory allegations be sufficient. See United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994) (dismissing § 2255 claims for lack of factual support). Accordingly, Brown cannot show that trial counsel was ineffective for failing to offer exhibits or use the "inconsistencies" in the police reports as impeachment material.

### 5.   Jury Composition

Brown contends that trial counsel erred in failing to contest the make-up of the jury pool. The Sixth Amendment provides that a defendant has the right to a jury selected from a representative cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 528 (1975). To establish a violation of the "fair cross-section" requirement, the defendant must show that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in the pool of potential jurors is not fair and reasonable in relation to the number of such persons in the community; and (3) this under representation is due to systematic exclusion of the group in the jury-selection process. Duren v. Missouri, 439 U.S. 357, 364 (1979). Factors for determining whether a group is "distinctive" include whether (1) the group is defined by a limiting quality, such as race or sex; (2) the group has a "common thread" or basic similarity in attitude, idea, or experience; and (3) there exists a "community of interests among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process." United States v. Green, 435 F. 3d 1265, 1271 (10th Cir. 2006) (citations omitted). Groups that have been

considered distinct for jury selection purposes include Asians, Blacks, and Hispanics, see United States v. Shinault, 147 F. 3d 1266, 1272 (10th Cir. 1998), and Native Americans, see United States v. Yazzie, 660 F. 2d 422, 426 (10th Cir. 1981). If defendant can show that the excluded group is "distinctive," he must also show that the representation of this group in the jury pool is not "fair and reasonable in relation to the number of such persons in the community" and that this "under representation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979).

The jury pool in this District is divided into two parts: for Tulsa County only, one-half of the jury pool is comprised of licensed drivers and the other half is comprised of registered voters; the jury pool from the other counties in this District is made up of registered voters only. N.D. LCvR 47.1(e), as adopted in N.D. LCR 1.2. Brown argues that Fleak was ineffective for failing to challenge the jury pool because there were only two black members of the pool and only one black juror was selected. However, Brown fails to demonstrate that the representation of blacks in the venire pool was not "fair and reasonable in relation to the number of such persons in the community," or that the under representation of blacks was "due to a systematic exclusion." Duren, 439 U.S. at 364. Accordingly, trial counsel was not ineffective for failing to challenge the composition of the jury.

### 6. Motion to Recuse

Brown contends that trial counsel provided ineffective assistance for refusing to file a motion to recuse. Brown claims that he was acquitted of bank robbery in front of Judge Cook in 1991 and Judge Cook remembered the previous case and "held it against [him]." Dkt. # 124, at 12. However, the government argues that, in 1992, Brown pleaded guilty to interstate transportation of stolen

13

property in front of former United States District Judge Thomas R. Brett, not Judge Cook. See United States v. Brown, 989 F.2d 508 (10th Cir. 1993). Accordingly, Brown's argument is without merit and trial counsel was not ineffective for failing to file a motion to recuse.

### 7. Jury Instructions

Brown contends that trial counsel's performance was deficient because he failed to request an instruction on "identity." Brown argues that identification was the "**ONLY**" issue as far as [his] case was concerned." Dkt. # 124, at 12 (emphasis in original). However, from a review of the trial transcript, it does not appear that identification was an issue in Brown's case. First, the evidence against him did not include an eyewitness identification because Brown did not enter the store during the robbery. Second, Brown's co-defendant testified about Brown's role in planning and executing the robbery. Thus, there was no evidence pertaining to an "identification" of Brown and, accordingly, an instruction on identification would have been unnecessary. Trial counsel was not ineffective for failing to request an instruction on identification.

### 8. Spoliation of Evidence Instruction

Brown argues that trial counsel was ineffective for failing to request an instruction on spoliation of evidence regarding the 911 tapes from the night of the robbery that were inadvertently destroyed. In order to warrant an instruction on spoliation of evidence, the party who destroyed the evidence must have had a duty to preserve the evidence, and the adverse party must have been prejudiced by the destruction of evidence. Burlington N. & Santa Fe Ry. Co. v. Grant, 505 F.3d 1013, 1032 (10th Cir. 2007). The party seeking the spoliation instruction must prove bad faith.

Turner v. Public Service Co. of Colorado, 563 F.3d 1136, 1149 (10th Cir. 2009). Here, Brown does not allege that the 911 tapes were destroyed in bad faith, nor does he prove that he was prejudiced by their destruction. He seems to suggest that the 911 tape was necessary to bolster, "as Lanie Hill and Terry Stitt alluded to at trial, that [Brown] was not in the getaway car."[2] Dkt. # 124, at 12. However, Ms. Stitt admitted at trial that she was unable to identify Brown and all she saw was the white car and the tag number. Even if the 911 tape confirms Brown's assertion that Stitt could not identify him, hearing the tape would have provided the same information that the jury received from Stitt's live testimony. Accordingly, Brown cannot show prejudice resulting from the destruction of the 911 tape. Trial counsel was not ineffective for failing to request an instruction on spoliation.

### 9.   Mere Presence Instruction

Brown argues that trial counsel should have requested a "mere presence" instruction to the jury. The Tenth Circuit pattern instructions do not provide a "mere presence" instruction. Moreover, the Ninth Circuit pattern instructions, which do include a mere presence instruction, note that "[a] mere presence instruction is unnecessary if the government's case is not solely based on the defendant's presence and the jury has been instructed on the elements of the crime." 9TH CIR. CRIM. JURY INSTR. 6.9 comment (2003) (citing United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir. 1992)). Here, there was sufficient evidence that Brown was a participant in the robbery. Accordingly, a "mere presence" instruction would not have been warranted. Trial counsel was not ineffective for failing to request a "mere presence" instruction.

### 10.  Inadequate Closing Argument

---

[2]   The government points out, and a review of the trial transcript confirms, that there was no witness named Lanie Hill who testified at trial. In addition, Ms. Stitt's name is Amy Lynn Stitt, not Terry Stitt.

Brown contends that trial counsel's closing argument was "professionally inadequate." His primary argument seems to be that trial counsel failed to argue in closing that Curley had been smoking marijuana laced with PCP and that the government did not introduce the 911 tape to corroborate its version of events. Brown also argues that trial counsel failed to point out alleged inconsistencies in the testimony of government witnesses. However, there is no transcript of trial counsel's closing argument and the Court cannot determine whether Brown's assertions are correct. However, even assuming that trial counsel in fact failed to make each of the points that Brown contends should have been included in closing argument, trial counsel was nonetheless not ineffective. The Tenth Circuit has upheld the denial of a § 2255 motion for ineffective assistance of counsel, without a transcript, where the defendant's counsel allegedly conceded defendant's guilt in closing argument. United States v. Dago, 441 F.2d 1238, 1252 (10th Cir. 2006). Moreover, trial counsel may make a strategic decision as to which arguments to make during closing, and may decide to focus on certain aspects of the case and remain silent on others. See id. at 1251. See also United States v. Williamson, 53 F.3d 1500, 1512 (10th Cir. 1995). While we have no record of what trial counsel said in closing, defendant has not met his burden of proving that his closing argument "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

**11.   Objection to Pre-sentence report**

Brown argues that trial counsel was ineffective for failing to object to the PSR prepared by the United States Probation Office, despite Brown's instructions to do so. However, the record reflects that trial counsel filed a sentencing memorandum asking for a sentence at the low-end of the guidelines (Dkt. # 79), and a document entitled "Defendant Mark Edward Brown's Objections to Presentence Report" (Dkt. # 80), which stated that trial counsel would not file improper objections,

16

but nonetheless listed Brown's requested objections. Brown also filed a pro se request that any sentencing enhancements be proven by clear and convincing evidence. Dkt. # 83. At sentencing, however, Judge Cook noted that the jury found the sentencing enhancement beyond a reasonable doubt. Dkt. # 103, at 2. Brown also objected to a criminal history point for a gaming violation, but that objection was overruled. See id. at 3-4. Although Brown now contends that trial counsel should have objected to Brown's classification as an armed career criminal, the record shows that Brown was never classified as such. Accordingly, trial counsel's performance was not deficient.

### 12.    Defendant's Request for Access to Discovery Materials

Brown next contends that trial counsel would not let him see discovery materials and "lied to [him] about a protective order."[3] Dkt. # 124, at 13. In his affidavit, Mr. Fleak states that he sent Brown all information that Brown requested. Dkt. # 136-2. Brown cannot demonstrate that trial counsel lied to him and, in any event, cannot show that he was prejudiced by the alleged failure to provide him with discovery materials. Brown did not receive ineffective assistance of counsel with regard to access to discovery materials.

### 13.    Constructive Possession of a Firearm

Finally, Brown argues that trial counsel was ineffective for failing to challenge the gun charge against Brown. Contrary to Brown's assertion, trial counsel submitted a proposed jury instruction seeking to have the jury instructed that they could not find Brown guilty on counts two and three unless they found that he personally used or carried a firearm. Dkt. # 54. However, trial counsel's request was denied and the instruction was not given. Dkt. # 100 at 271-72. Rather, the

---

[3]    A protective order issued on August 30, 2006 allowed defense counsel to share the contents of the grand jury transcripts, but prevented counsel from giving Brown copies of the actual transcripts. See Dkt. # 42.

district court instructed the jury that Brown could be found guilty of the firearm offense if he "or his co-defendant Michael Lee Curly [sic] used or carried or possessed a firearm" because the co-defendants "are each responsible for the acts of the other, if you find beyond a reasonable doubt that they both participated in the offense charged in Count Two." Dkt. # 57, at 32. A defendant charged with aiding and abetting may be held liable for the foreseeable crimes of co-defendants in furtherance of the crime. See United States v. Foreman, 87 Fed. Appx. 107, 110-111 (citing Pinkerton v. United States, 328 U.S. 640 (1946)). Accordingly, the instruction given was appropriate pursuant to Tenth Circuit law and trial counsel was not ineffective for failing to "attack the gun portion of the case."  **B.   Ineffective Assistance of Appellate Counsel**

Brown also alleges that he received ineffective assistance of appellate counsel. He argues that appellate counsel failed to raise his request for substitute counsel between trial and sentencing and the denial of his right to represent himself. As stated in his affidavit, Brown's appellate counsel, Weber, researched each of Brown's requested issues and searched the record for other meritorious issues to raise. Dkt. # 136-3, at 3. Weber then filed an Anders brief, stating that there were no non-frivolous issues for appeal. To the extent that defendant alleges certain arguments should have been raised on appeal, the Court must consider the merits of the omitted issue. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995). However, here, the issues that Brown wanted counsel to raise were raised by Brown in his response to Weber's Anders brief. Those issues were found to be without merit by the Tenth Circuit. See Brown, 255 Fed. Appx. 292. "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'" Cook, 45 F.3d at 392. Accordingly, Brown did not receive ineffective assistance of appellate counsel.

In sum, because Brown has failed to show that either trial or appellate counsel's performance fell below the objectively reasonable level, the Court need not reach the second prong of Strickland and determine whether he suffered prejudice. Accordingly, Brown did not receive ineffective assistance of trial counsel.

### III.

Brown's other ground for relief is that the Tenth Circuit failed to address his request for substitute appellate counsel when it affirmed his conviction and sentence. It is unclear whether Brown is referring to his request for substitute counsel after Fleak was permitted to withdraw, which was granted, or a request for substitute counsel after his new counsel, Weber, filed an Anders brief stating that there were no non-frivolous issues to raise on appeal. To the extent that Brown argues that he was not permitted to substitute counsel after Weber filed the Anders brief, the appellate record does not show that Brown ever made such a request. Regardless, Brown cannot show that he was prejudiced by the Tenth Circuit's failure to replace Weber. Brown filed a response to the Anders brief and raised the issues he now claims should have been raised by his counsel. The Tenth Circuit considered Brown's arguments, concluded that they were without merit, and affirmed Brown's conviction and sentence. See Brown, 255 Fed. Appx. 292. Accordingly, Brown was not prejudiced by the failure to appoint substitute counsel.

**IT IS THEREFORE ORDERED** that defendant Mark Edward Brown's pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 124) is **denied**. A separate judgment is entered herewith.

**DATED** this 10th day of August, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT